and at this time we'll hear Charney v. Wyckoff Good morning. Good morning. May it please the court my name is Jennifer S. Wyckoff and I am the pro se appellant in this matter. As this is a 10b5 securities case all six elements of the case must be met and there is a conflict and discrepancies that exist between the magistrate judge judge's lengthy analysis and his report and recommendation which says that these all six elements were not met and the district court judge's decision where he has chosen to overrule this analysis with no reference to any evidentiary support required or provided by the plaintiff's appellees. In the district court's decision on July 30th 2015 the court granted summary judgment to plaintiff's appellees and its ruling does not agree in which the magistrate judge's analysis says it best that plaintiffs are not entitled to summary judgment on the issue of whether Charney and Zimbalist criminal acts were reasonably foreseeable and also that the plaintiffs cannot be granted summary judgment on the issue of loss causation. The district court's ruling is procedurally unreasonable as it affected substantial rights of mine as a defendant since both of these elements were not met. There was also no causal connection made between my allegedly untruthful statements and or negligence and the plaintiff's appellee's actual losses. The magistrate judge states that there is no evidentiary support for any reliance provided by the plaintiffs regarding misstatements concerning due diligence and he also acknowledges the evidence I supplied that I had no knowledge consistently said and supplied that I had no knowledge that the perpetrators of the crime Charney and Zimbalist were engaging in a fraudulent scheme or that they would abscond with the investor's money. The court also oversteps and overreaches concerning Sienter and does not refer to any other statements other than the three that Magistrate Gorenstein refers to and identifies in his report and recommendation on page 102 of Appellant Appendix and page 20 of the actual document on the docket. Yes. I thought Sienter was no longer an issue because didn't you plead guilty here? There is a guilty plea your honor and upon analysis and you can also review in the magistrate's report that Sienter is limited to three statements only from that plea. It's not an overarching plea of Sienter and in no case does that Sienter. Three statements that we were looking at here as well. Those are the three statements that you'd invested that you'd invested with them in the past that you would monitor the properties and that you did do do that you use due diligence. Correct. And that they were that those two were reliable people. Those were the statements and those are the statements that are still involved here aren't they? They are the statements that are still involved. However, the district court can't cite to evidence actually that that meets that Sienter beyond those three statements and as far as the due diligence there's also no causal connection and there hasn't been any any relevant relationship submitted to the court or that the court cites about that Sienter as it relates to reliance or also the loss causation argument. As far as reliance is concerned I think there are many plaintiffs here right? There are like 30 of them or something? 19. Four of I think it's three of them actually removed themselves. So there's 19 left. So and I take it your position is that they invested based upon different considerations not just on your statements but other things they were told by others to do it or they you work for American Express that that was enough whatever. Correct. That seems to be an issue that was not resolved and would not have had to be resolved in the criminal case. It wasn't addressed in the criminal case and the issue of foreseeability is significant here also because in the record I know that it's not in the appendix but in the record is the testimony of Detective Simeon Plyler of the Los Angeles County Sheriff's Department and in that particular deposition which is significant your honors Mr. Brody on his cross-examination of Detective Plyler did ask as to about the information about due diligence and also whether it was possible for a financial advisor in this case to foresee what was happening and the sheriff's answer in that court but it is in the record already the witness who is the sheriff said his answer was no it was not possible and in fact he also asked if there were any other financial advisors involved with this and his answer was yes and he cited other victims one who in fact was Miss Zimbalist a friend for 35 years she was a real estate agent and she saw these properties she lived in the market she knew the market and she felt that the business that Zimbalist was in could be profitable if they had done it right and in fact she and her son-in-law and the four people that she referred this investment to herself they all lost their money in this investment as well you've reserved a couple minutes rebuttal yes sir we'll hear the other side then we'll hear you again thank you thank you may it please the court Scott a Brody for the plaintiffs appellees your honors ms. Wilcov entered a guilty plea to 24 charges incorporating violations of the Martin Act and New York State's general business law as part of a scheme to defraud the plaintiffs in this case those guilty pleas didn't require her to concede reliance is that right they did not require her to concede reliance and that is why as part of my brief and as part of the evidence that was submitted before magistrate Gorenstein we submitted a 35 page distilled analysis of the reliance issue and in our brief here we distilled down even further to show one of the 19 plaintiffs and the events that took place that set forth the pages 6 through 9 of our brief but wouldn't you have to show reliance with respect separately with respect to each of these 31 that's what I thought it was 31 players but there's there's less than 31 dropping away it appears we set forth the reliance issues with regards to all of the plaintiffs in a 34 page document that we submitted to magistrate Gorenstein ms. Wilcov in her opposition did not factually dispute the reliance issue what she did was she blamed other plaintiffs in this case nine of them for referring people to her and saying well if they were equally as negligent as I was in causing these people to invest ms. Wilcov has at no time during the course of this litigation acknowledged that she knowingly and intentionally misrepresented her conduct to each of these plaintiffs in violation of the very close personal relationship she developed with each of them you still have the question of reliance but it can have a material omission or false statement but there still has to be reliance but each plaintiff in this case very specifically stated under oath during their deposition that they relied upon ms. Wilcov's representations to them and unlike a situation for example where you might invest in a stock such as coca-cola where you could have other information available to you these were very specific limited investments she was these investments weren't there of the two people two people who were involved here Zimbalist and Chandler didn't hadn't they produce the document that explain these investments well actually ms. Wilcov produced the document to each of the plaintiffs wrote it we believe that they wrote it we don't know that for a fact if they if they looked at the doc if they looked at the document they would have relied upon they could have relied upon that but the issue isn't whether or not they they solely relied upon ms. Wilcov the question is what induced them to make the investment in the first instance they would never have seen these documents created in California had ms. Wilcov not introduced them in the first place not represented that she had investigated those documents not represented that she had invested with them successfully in the past her because other customers recommended her there's no question ms. Wilcov argues that nine of the plaintiffs should be found negligent whether they ought to be negligent the question and reliance is whether those people invested because of what ms. Wilcov told them or whether they invested because they they they came to her with the idea of investing so let's use mr. Kuhn as an example because he's one of those nine mr. Kuhn was introduced to ms. Wilcov by Scott Charney mr. Kuhn then went met with ms. Wilcov several times she took him to lunch she went through the investments with him there's no testimony that he went through these investments with mr. Charney only that mr. Charney made the introduction now he may have had some level of reliance because he was introduced by somebody but she used her position as American Express financial advisor her then independent meetings with each of these people going through the alleged investment representing that she did her due diligence on them representing that she had invested with them in the past represented that she was monitoring the money which by the way she didn't because three or four different things that a plaintiff could have relied upon and you're just assuming that one of those which was what she said was it but but but it could have been the other things well it could have been all of those things know that without without having a having a hearing to determine what these people say they relied on because there was no evidence to contradict it we would we would that would be like in a class action if we had fun if thankfully we don't have 5,000 people who invested here we would need 5,000 hearings to show that in each case she had an individual relationship with each one she induced them all to invest they relied upon her we are not here to discuss joint and several liability we are here with whether or not her representations to each of these plaintiffs induced them to invest we know that the representation that Ms. Wilcoff herself had invested successfully with this interest was false because she told a judge in a New York State court that it was false and if she actually came right out that's one of her false statements and by the way she keeps saying well it's only those three false statements I excerpted exactly what she said at page 10 of my she said some of the false statements I said to the investors were as follows not that those were the only false things she said she goes on to say to us to a state court judge I knew little about Zimlas and Chandler and their companies I had no basis for recommending their companies and their investments your honor since that time since she stated that she has at no time shown any remorse for any of her conduct and when she actually learned that all of these investments were fraudulent instead of notifying the investors that she had information to suggest that their money was being lost she sued Zimbalist and Chandler for her commissions that's what she did not go and notify these people of what was going on I thank you your honors Ms. Wilcoff will hear rebuttal thank you your honors so first thing I'd like to say and then I'll address more specifically Mr. Brody's comments is that the record shows unequivocally and this is not me it's the magistrate judge that the plaintiff's appellees cannot provide sufficient evidentiary support to prove that they relied on the failed to meet the but for required test required for reliance that's what he said and also that the plaintiff's appellees have also failed to meet the element of loss causation as per the argument submitted to the court and that includes judge Gorenstein's footnote in his report and recommendation and indication about this and that only one plaintiff Scott at Vabsky remotely got close and also did not succeed and if you look at page 25 of my brief that I submitted I quoted from that report and recommendations specifically and I'm only going to read you one sentence from it because I want to use the rest of my time to correct mr. Brody statements as far as plaintiffs briefs disclosed the only plaintiff who came close to testifying that the false statements regarding due diligence were a but-for cause of the investment with Scott at California properties if he believed that will carve had not investigated and that's from his deposition and the rest of it you have so I'm not going to read it to you now there are 19 individual clients here your honors and mr. Brody has used mr. Coon as his example and one of the things that you should know is that mr. Coon and mr. Charney were friends for years mr. mr. Coon also worked for a financial institution and he stated in his deposition testimony that if will carve was not an American Express financial advisors he would not have invested the other thing that you should note is that the suit for the commissions that mr. Brody refers to came long before it was discovered that these investments were a scam and mr. and mr. Broder and mr. Brody neglects to inform you that upon finding out that these investments were a scam I was working with an attorney in Southern California who was a litigator he helped me identify these as a scam he helped me to connect with the police department in in that area and that attorney I asked that attorney and I paid that attorney to send a letter to all of the plaintiff investors about these investments becoming a scam and giving them information of what they should do to did speak to the police department they did ask me to collect all of the information from the investors which I did make every effort to do and in fact the New York Police Department came in in a search and took it all away from me so that I wouldn't be able to file it appropriately thank you thank you both will reserve decision